# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ANTOINE YOUNG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV1890HEA/MLM |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the court is the Petition Under 28 U.S.C. § 2254 by a Person in State Custody filed by Petitioner Antoine Young ("Petitioner"). Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 9. Petitioner filed a Traverse. Doc. 13. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 6.

## I.
## BACKGROUND

Petitioner was charged by Substitute Information in Lieu of Indictment as follows: Count I, the felony of forcible rape, in that on September 26, 2000, in the City of St. Louis, Petitioner knowingly had sexual intercourse with K.N.[1] by use of forcible compulsion; Count II, the class B felony of kidnaping, in that on September 26, 2000, Petitioner unlawfully removed K.N., without her consent, from North Market and Taylor for the purpose of facilitating the commission of the felony of forcible rape of K.N.; Count III, the class C felony of assault in the second degree, in that on

---

[1] The charging document identified the victim by name. The court will identify the victim by her initials or as the Victim.

September 26, 2000, Petitioner attempted to cause physical injury to K.N. by means of a dangerous instrument; and Count IV, the class A misdemeanor of assault in the third degree, in that on September 26, 2000, Petitioner attempted to cause physical injury to K.N. by choking her. As an alternative to Count III, Petitioner was charged in Count V with the class C felony of assault in the second degree, in that on September 26, 2000, Petitioner recklessly caused serious physical injury to K.N. by striking her. Petitioner was charged as a prior and persistent offender. Resp. Ex. C at 17-18.

The testimony at Petitioner's trial was that Petitioner attacked the Victim as she was walking to a friend's home; that Petitioner hit the victim on the side of her face with a bottle; that this strike dislocated and fractured the Victim's jaw; that Petitioner then dragged the Victim into a nearby park and ordered her to remove her clothing; that the Victim complied; that Petitioner then threw the Victim on the ground, choked her, and raped her; that Petitioner then left and the Victim went to her friend's house and called the police; that the Victim was treated for her injuries, which included multiple fractures to her jaw; that the hospital examined the Victim with a rape kit; that the Victim identified Petitioner as her attacker; that Petitioner was apprehended; and that DNA samples from Petitioner matched DNA from swabs obtained from the Victim. Resp. Ex. I at 190-209, 222-23, 391, 441, 464-65, 474.

Petitioner did not testify at trial and called one witness who testified that Petitioner and the Victim knew one another.

Petitioner was convicted as charged in Counts I-IV. Resp. Ex. C at 34-37. The court found that he was a prior and persistent offender and sentenced him to consecutive sentences of 100 years incarceration for Count I and 20 years for Counts II and III. Petitioner was given time served for Count IV. Resp. Ex. C at 47-49.

Petitioner filed a direct appeal. Resp. Ex. E.  By decision dated November 22, 2005, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. D.  Petitioner filed a pro se post-conviction relief motion. Resp. Ex. G at 3-9.  Counsel was appointed and filed an amended motion. Resp. Ex. G at 11-37.  The motion court denied Petitioner post-conviction relief and he filed an appeal with the Missouri appellate court. Resp. Ex. G at 38-45; Resp. Ex. H.  By decision dated November 27, 2007, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. H.

On December 8, 2009, Petitioner filed his § 2254 Petition in which he raises the following grounds for relief:

(1) The evidence in support of the kidnaping charge was insufficient because the State failed to prove that Petitioner had "removed" the Victim;

(2) The trial court erred when it refused to allow Petitioner's counsel to cross-examine the Victim regarding her prior arrest for exposing herself in public;

(3) Petitioner received ineffective assistance of counsel because trial counsel failed to investigate and call Tyrone Cherry and Marvin King as witnesses at trial;

(4) Petitioner received ineffective assistance of counsel because trial counsel told the jury during opening statement that it would hear evidence showing that the Victim's accusations stemmed from an arrangement of consensual sex in exchange for drugs that turned into a "tussle," but then told Petitioner not to testify so that no evidence was presented in support of the defense theory;

(5) Petitioner received ineffective assistance of counsel because trial counsel failed to use a peremptory strike against Venireperson Miller;

(6) Petitioner received ineffective assistance of counsel because trial counsel failed to obtain an independent test of the Victim's blood and urine on the night of the attack, which test would have provided impeachment evidence;

(7) Petitioner received ineffective assistance of counsel because trial counsel stated during voir dire that Petitioner struck the Victim with his fist, rather than with a liquor bottle[2];

(8) Petitioner received ineffective assistance of counsel because appellate counsel failed to argue that the trial court erred when it refused to strike Venireperson Miller for cause.

Doc. 1.

# III.
# EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

---

[2]     Defense counsel made this argument during opening statement rather than during voir dire. Resp. Ex. I at 184.

4

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994).

"[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." McKinnon v. Lockhart, 921 F.2d 830, 833 (8th Cir. 1990) (citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United

States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

Petitioner did not raise the issues of Grounds 5-8 before the Missouri appellate court and has, therefore, procedurally defaulted them. Petitioner argues that ineffective assistance of counsel should excuse his procedural default. In support of this argument, Plaintiff states that counsel's performance fell below an objective standard of reasonableness. Petitioner also argues that because the defaulted claims "involve[] ineffective assistance of counsel, which is a question of law, these claims can be reviewed de novo." Doc. 13 at 16. In regard to ineffectiveness of counsel as grounds to excuse procedural default, the Eighth Circuit has held that "[i]neffective assistance of trial or appellate counsel may be cause excusing a procedural default." Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002) (citing Murray v. Carrier, 477 U.S. 478, 491-92, (1986)). "However, in order to urge ineffective assistance as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court." Id. (citing Edwards v. Carpenter, 529 U.S. 446, 450-53 (2000); Tokar v. Bowersox, 198 F.3d 1039, 1051 n. 13 (8th Cir.1999)). Petitioner has not done so. Petitioner, therefore, has failed to suggest cause and prejudice to excuse his procedural

default of Grounds 5-8. As such, the court finds that Ground 5-8 should be denied on the basis that they are procedurally defaulted. The court also finds that Petitioner's § 2254 Petition is timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." <u>Id.</u> at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-13.

The Court further explained in <u>Williams</u> that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. <u>See also</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

## IV.
## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

reasonable professional judgment." Id. at 690.  To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697.  To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669.  The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides.  No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.  Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted).  ...

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  (citation omitted). There are countless ways to provide effective assistance in any given case.  Even the

best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

# V.
## DISCUSSION

**Ground 1 - The evidence in support of the kidnaping charge was insufficient because the State failed to prove that Petitioner had "removed" the Victim:**

In support of Ground 1 Petitioner argues that kidnaping is not the proper charge if the movement of the victim is only incidental to another offense and that his conviction for kidnaping should be reversed because he did not expose the victim to more danger. Petitioner further argues that assault, second degree, facilitated the rape, not a kidnaping; that the incident took place on a sidewalk where the park was; that there was no seclusion; and that, therefore, his constitutional rights were violated by his being convicted of kidnaping. Doc. 13 at 6-8.

Upon addressing the issue of Petitioner's Ground 1 the Missouri appellate court held:

> When reviewing the sufficiency of the evidence to sustain a conviction, this court accepts as true all evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. State v. Chaney, 967 S.W.2d 47, 52 (Mo. banc 1998). The court determines if there is sufficient evidence to permit a reasonable juror to find guilt. State v. Grim, 854 S.W.2d 403, 405 (Mo. banc 1993). The jury is entitled to believe all, part of none of the testimony of any witness. State v. Porter, 640 S.W.2d 125, 127 (Mo. banc 1982).

> An individual commits a kidnaping if: "he or she unlawfully removes another without his or her consent from the place where he or she is found or unlawfully confines another without his or her consent for a substantial period, for the purpose of ... (4) Facilitating the commission of any felony or flight thereafter." Section 565.110.1.

> Kidnaping applies to situations in which the asportation or confinement of the victim is not merely incidental to another offense, but creates a harm that is not adequately covered by the other offense. State v. Tomlin, 864 S.W.2d 364, 366-67 (Mo. App. E.D. 1993). The movement or confinement is not merely incidental to an offense if it creates a risk of additional harm or danger. Id. at 367. [additional citations omitted].

There was sufficient evidence presented at trial that Young forced [the Victim] from the street to a park, providing a more secluded venue for the crime - this act constitutes a "removal" under Section 565.110.1. Point denied.

Resp. Ex. D at 2-3.

First, issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). Further, the United States Supreme Court held in Garner v. Louisiana, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." To the extent that Petitioner in the matter under consideration asks this court to interpret State law, Petitioner does not assert a constitutional violation, but merely requires the court to interpret and apply Mo. Rev. Stat. § 565.110.1. As such, Petitioner's claim is not cognizable pursuant to federal habeas review.

Alternatively, pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 1. The United States Supreme Court stated in Wright v. West, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S. 277, 283-84 (1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). See also Scott v. Jones, 915 F.2d 1188, 1190 (8th Cir. 1990); Haymon v. Higgins, 846 F.2d 1145, 1146 (8th Cir. 1988). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." Jackson, 443 U.S. at 319. See also Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003) ("We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.") (internal citations omitted); Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing Jackson, 443 U.S. at 319, 321, 324; Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir.2000)).

Consistent with federal law, the State appellate court held that when considering the sufficiency of the evidence it accepts all evidence in a manner which is favorable to the State. See Jackson, 443 U.S. at 319; Whitehead, 340 F.3d at 536; Weston, 272 F.3d at 1111. Also consistent with federal law, the State appellate court considered that there is sufficient evidence if it permits a reasonable juror to find guilt. See Wright, 505 U.S. at 283-84; Scott, 915 F.2d at 1190; Haymon, 846 F.2d at 1146. The State appellate court then considered the requirements of § 565.110.1 and concluded that Petitioner's conduct constituted unlawful removal under this statute. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the court

finds that the decision of the Missouri appellate court in regard to Petitioner's Ground 1 resulted in a decision which was based on a reasonable determination of the facts in light of the evidence presented at trial. See § 2254(d)(2). The court finds, therefore, that Petitioner should be denied habeas relief on the basis of Ground 1.

## Ground 2 - The trial court erred when it refused to allow Petitioner's counsel to cross-examine the Victim regarding her prior arrest for exposing herself in public:

In support of Ground 2 Petitioner argues that the Victim had two charges, one for lewd and lascivious conduct and the other for exposing herself; that the trial court's allowing Petitioner's counsel to cross-examine the Victim on her character "opened the door for testimony"; and that had the court permitted counsel to cross-examine the victim on public exposure, the jury would have had a reasonable doubt that Petitioner raped the victim. Doc. 13 at 8-9.

Upon addressing the issue of Ground 2, the Missouri appellate court held:

Young contends the trial court erred when it refused to allow him to cross-examine [the Victim] regarding her prior arrest for exposing herself in public. Young claims this arrest is relevant to his "theory" - that [the Victim] is a prostitute who engaged in consensual sex with him. We disagree. We note that Young did not testify, and called but one witness whose testimony was that Young and [the Victim] knew one another. There was no independent evidence as to counsel's "theory," which was nothing more than opening statement hyperbole.

The trial court is vested with broad discretion to admit or exclude evidence at trial, and in deciding the permissible scope of cross-examination. State v. Johns, 34 S.W.3d 93, 103 (Mo. banc 2000); State v. Oates, 12 S.W.3d 307, 313 (Mo. banc 2000). Error will be found only if this discretion was clearly abused. Id. A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. State v. Brown, 939 S.W.2d 882, 883-84 (Mo. banc 1997).

Evidence of prior arrests is generally admissible to impeach a witness's credibility, but may be admissible if it goes to an issue other than the arrestee's credibility. State v. Skinner, 734 S.W.2d 877, 885 (Mo. App. E.D. 1987). ... .

Evidence of a rape victim's prior sexual conduct is generally inadmissible. Section 491.015.1. Such evidence is, however, admissible under some circumstances - such as to show the "immediate surrounding circumstances" of the crime. Section

491.015.1(3). Even so, evidence cannot come in under this exception unless it is relevant. Section 491.015.2.

> The court did not abuse its discretion when it refused to allow Young to cross-examine [the Victim] regarding her prior arrest for public exposure, as such testimony was irrelevant. Point denied.

Resp. Ex. D at 3-4.

First, Petitioner's Ground 2 involves the State court's interpretation and application of State law. As set forth above in regard to Ground 1, a State court's the interpretation and application of state law is not cognizable in federal habeas review. See Garner, 368 U.S. at 166; Poe, 39 F.3d at 207. The court finds, therefore, that Petitioner's Ground 2 is not cognizable pursuant to federal habeas review.

Alternatively, pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 2. "'The Confrontation Clause of the Sixth Amendment guarantees to a defendant the opportunity for effective cross-examination of witnesses against him, including inquiry into the witnesses' motivation and bias.'" United States v. Triplett, 104 F.3d 1074, 1079 (8th Cir. 1987) (quoting United States v. Willis, 997 F.2d 407, 415 (8th Cir.1993)). "This guarantee, however, is not without limitation." Id. (citing United States v. Wood, 834 F.2d 1382, 1384 (8th Cir.1987) ("[We] have long recognized that the trial judge must retain discretion to limit the scope of cross-examination."); United States v. Juvenile NB, 59 F.3d 771, 778 (8th Cir.1995)). "Reversal of a trial court's decision to limit cross-examination is warranted, therefore, 'only where there has been clear abuse of discretion, and a showing of prejudice to the defendant.'" Id. (quoting Wood, 834 F.2d at 1384). In particular, under federal law limitation of the cross examination of a rape victim regarding her prior sexual history is "entrusted to the broad discretion of the trial judge." United States v. Kasto, 584 F.2d 268, 272 (8th Cir. 1978) (citations omitted). Further, "absent circumstances which enhance its probative value, evidence of a rape victim's unchastity, whether in

the form of testimony concerning her general reputation or direct or cross-examination testimony concerning specific acts with persons other than the defendant, is ordinarily insufficiently probative either of her general credibility as a witness or of her consent to intercourse with the defendant on the particular occasion charged to outweigh its highly prejudicial effect." Id. at 271-72 (citations omitted).

Indeed, consistent with federal law, the Missouri appellate court considered that a victim's prior sexual conduct is generally not admissible. See Kasto, 584 F.2d at 272. The Missouri appellate court also considered that its review of the limitation of cross-examination of the Victim was subject to an abuse of discretion standard. See Triplett, 104 F.3d at 1079. The court notes that the Victim's prior arrest for indecent exposure was not relevant nor did it establish that she had consensual sex with Petitioner. As such, the court finds that the decision of the Missouri appellate court is not contrary to federal law and that it is a reasonable interpretation of federal law. Further, the decision of the Missouri appellate court, in regard to Petitioner's Ground 2, resulted in a decision which was based on a reasonable determination of the facts in light of the evidence presented at trial. See § 2254(d)(2). As such, the court finds that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

**Ground 3 - Petitioner received ineffective assistance of counsel because trial counsel failed to investigate and call Tyrone Cherry and Marvin King as witnesses at trial**:

In support of Ground 3 Petitioner argues that the Victim testified that she did not know Petitioner before the attack and that she never had consensual sexual relations with him; that prior to trial Petitioner told counsel to call Mr. Cherry, Mr. Marvin King, and Donald Buchanan as defense witnesses; that counsel only called Mr. Buchanan; and that Mr. Cherry and Mr. King would have testified that the Victim previously knew Petitioner. Doc. 13 at 10-12.

Upon addressing all of Petitioner's claims of ineffective assistance of counsel, the Missouri appellate court held that it must rely on the two-pronged test of Strickland, 466 U.S. at 687-92, as set forth in detail above. Resp. Ex. H at 2-3. Specifically, the Missouri appellate court held that to overcome the presumption that counsel provided competent representation, it must be shown that counsel's representation fell below an objective standard of reasonableness." Resp. Ex. H at 3 (citing Anderson v. State, 196 S.W.3d 28, 33 (Mo. 2006) (en banc)). The court also held that pursuant to the second prong of the Strickland test, it must be shown that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Resp. Ex. H at 3.

Specifically, upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court held:

> The motion court found that [the claim of Ground 3] did not amount to ineffective assistance of counsel because the proposed testimony would have been cumulative of the testimony of Donald Buchanan. Additionally, the motion court found that because the victim's testimony was corroborated by physical evidence, such proposed testimony would have created no reasonable probability that the trial outcome would have been different. We find no clear error in the motion court's denial of this claim for relief.

Resp. Ex. H at 4.

The Missouri appellate court continued to consider that "[f]ailure to present cumulative evidence is not ineffective assistance of counsel"; that Mr. Cherry's and Mr. King's testimony would have been cumulative; and that, therefore, Petitioner did not receive ineffective assistance of counsel because trial counsel failed to call Mr. Cherry and Mr. King as witnesses. Resp. Ex. H at 4 (citing Winfield v. State, 93 S.W.3d 732, 740 (Mo. banc 2002)).

Pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 3. The court has set forth, above, the standard applicable to claims of ineffective assistance of counsel.

As discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. Strickland, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. The decision whether to call witnesses may be a matter of trial strategy. Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F.3d 1547,1556 (8th Cir. 1994). The Eighth Circuit has consistently held that counsel is not ineffective for failing to adduce cumulative evidence. See Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir. 2006) (citing Bucklew v. Luebbers, 436 F.3d 1010, 1020 (8th Cir. 2006); Hall v. Luebbers, 296 F.3d 685 (8th Cir. 2002)).

The Missouri appellate court specifically considered federal law applicable to Petitioner's claim of ineffective assistance of counsel presented in Ground 3 and concluded that the motion court did not err in finding that the testimony of Mr. Cherry and Mr. King would not have changed the outcome of Petitioner's trial. See Strickland, 466 U.S. at 694. The Missouri appellate court further considered that because their testimony was cumulative, the failure of counsel to call Mr. Cherry and Mr. King was not ineffective assistance of counsel. See Winfield, 460 F.3d at 1033. The court notes that there was physical evidence that Petitioner used force against the Victim. Under such circumstances, evidence that Petitioner knew the Victim prior to his kidnaping and raping her would

not have affected the outcome of Petitioner's trial.  The court finds, therefore, that the decision of

the Missouri appellate court, in regard to the issue of Petitioner's Ground 3, is not contrary to federal

law and that it is a reasonable application of federal law.  Further, the decision of the Missouri

appellate court in regard to Petitioner's Ground 3 resulted in a decision which was based on a

reasonable determination of the facts in light of the evidence presented at trial. See § 2254(d)(2).  As

such, the court finds that Petitioner's Ground 3 is without merit and that habeas relief on its basis

should be denied.

**Ground 4 - Petitioner received ineffective assistance of counsel because trial counsel told the
jury during opening statement that it would hear evidence showing that the Victim's
accusations stemmed from an arrangement of consensual sex in exchange for drugs that turned
into a "tussle," but then told Petitioner not to testify so that no evidence was presented in
support of the defense theory:**

In support of Ground 4 Petitioner argues that counsel's conduct, in regard to the issue of

Ground 4, "went beyond what any skillful or competent attorney would have done in similar

circumstances"; that "no competent trial counsel would say in opening statement that it was a drug

for sex deal, but fail to put the only eyewitness for the defense (petitioner) on the stand"; and that had

it not been for trial counsel's error in this regard, there would have been a different outcome of

Petitioner's trial.  Doc. 13 at 12-14.

As stated above, upon addressing all of Petitioner's claims of ineffective counsel, the Missouri

appellate court considered Strickland, 466 U.S. at 687-92, 94.  Specifically, upon addressing the issue

of Petitioner's Ground 4, the Missouri appellate court considered that:

> The record shows that, after hearing his counsel's opening statement, the
> testimony of the State's witnesses, and the evidence presented on his behalf, the
> movant made a decision not to testify.  At the conclusion of his case, defense counsel
> asked for, and was granted, a recess to discuss with the movant his decision whether
> or not testify.  After this recess, and defense counsel's announcement to the court that
> the defense rested, the court specifically advised the movant that he had the right to
> testify or not to testify, and that it was his decision alone to make.  The movant did
> not indicate that he wished to testify.  Under these circumstances, the movant cannot

show that his counsel was ineffective for telling the jury in opening statement that they would hear certain evidence, but then failing to call the movant to testify in support of the announced defense. This is because it was the movant's decision, not his attorney's, which resulted in the promised theory of defense lacking evidentiary support. Further, the movant cannot show prejudice. Immediately prior to opening statements, the trial court read Instructions No. 1 and 2 ... to the jury. The jury was informed by Instruction 1 that it was their duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. The jury was informed by Instruction No. 2 that opening statements of attorneys were not evidence. A jury is presumed to have followed a trial court's instructions. State v. Zink, 181 S.W.3d 66, 73 (Mo. banc 2005). Finally, the evidence against the movant in this case was overwhelming. We find no clear error on the part of the motion court in denying this claim for relief.

Resp. Ex. H at 5-6.

Pursuant to Williams, the court will consider federal law applicable to the issue of Petitioner's Ground 4. The court has set forth, above, the standard applicable to claims of ineffective assistance of counsel. Further, the Eighth Circuit has held that counsel may have been ineffective for "failing to fulfill a promise made in an opening statement to call a witness." Williams v. Bowersox, 340 F.3d 667, 671-72 (8th Cir. 2003). However, such an error is not always one "of a constitutional dimension." Id. (citing Yancey v. Hall, 237 F. Supp.2d at 135) (holding that it was not ineffective assistance for petitioner's attorney to promise that petitioner would testify and that the evidence would show petitioner was not the person who committed the crime, even though petitioner ultimately did not testify and his counsel rested without adducing all of the promised evidence) (other citations omitted). The diversity among federal courts as to whether counsel is ineffective for telling the jury during opening statements that certain evidence would be produced and then failing to produce such evidence "suggests that [a state court does] not unreasonably apply Strickland" upon rejecting a claim of ineffective assistance of counsel based on such an argument. Underdahl v. Carlson, 381 F.3d 740, 742 (8th Cir. 2004) (quoting Williams, 240 F.3d at 672). Additionally, under

federal law, a jury is presumed to have followed the court's instructions. See Weeks v. Angelone, 528 U.S. 225, 234 (2000).

First, the Missouri appellate court considered that the court instructed the jury to consider only the evidence presented and that the jury is presumed to have followed this instruction. See id. While there are cases finding that a petitioner received ineffective assistance of counsel where counsel referred to evidence or testimony during opening statement but did not produce this evidence or testimony, Petitioner's case is distinguishable from such cases. In Petitioner's case, it was Petitioner's decision not to testify. As a result of Petitioner's own decision the jury did not hear testimony regarding Petitioner's allegation that he had consensual sex with the victim. Moreover, because of the diversity of opinion among federal courts, it cannot be said that the Missouri appellate court did not unreasonably apply Strickland upon denying Petitioner post-conviction relief based on the allegation of Ground 4. See Underdahl, 381 F.3d at 742. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 4 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 4 resulted in a decision which was based on a reasonable determination of the facts in light of the evidence presented at trial. See § 2254(d)(2). As such, the court finds that Petitioner's Ground 4 is without merit and that habeas relief on its basis should be denied.

## VI.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner's Grounds 1 and 2 are not cognizable pursuant to federal habeas review; that Grounds 3-4 and, alternatively, Grounds 1 and 2 are without merit; and that Petitioner procedurally defaulted Grounds 5-8. As such, the court further finds that Petitioner's § 2254 Petition for habeas relief should be denied in its entirety. The

undersigned also finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; Doc. 1.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 25th day of August, 2009.